## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**DONALD GAINES MENSER**                                                                **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO. 1:13cv532-MTP**

**WEXFORD HEALTH, et al.**                                                            **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Summary Judgment [34] filed by the Plaintiff Donald Gaines Menser and Motion for Summary Judgment [44] filed by Defendants Wexford Health and Ronald Woodall. Having carefully considered the submissions of the parties and the applicable law, the Court finds that Plaintiff's Motion [34] should be denied, that Defendants' Motion for Summary Judgment [44] should be granted, and that one of Plaintiff's excessive force claims against Defendant Enlers be dismissed for failure to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff Donald Gaines Menser, proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to 42 U.S.C. § 1983 on or about May 30, 2013.[1] Although Menser is no longer incarcerated, at the time of the events giving rise to this lawsuit, Menser was a post-conviction inmate incarcerated at South Mississippi Correctional Institute ("SMCI"). Through his complaint and as clarified during his *Spears*[2] hearing, Menser alleges claims of excessive force and deliberate

---

[1] *See* Complaint [1] at 4.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Menser's *Spears* hearing took place on June 3, 2014.

1

indifference of his medical needs against the Defendants.

Menser claims that Defendant Captain Enlers violated his Eighth Amendment rights by using excessive force against him on two occasions. First, Menser alleges that on or about September 13, 2012, Defendant Enlers ordered him out of the prison dining room after mistaking him for another inmate who had cursed an officer. Menser alleges that Enlers berated him and slapped him. He claims Enlers took him to Tower 5 the next morning where she slapped him two more times. Menser stated that he did not sustain any physical injuries.[3] Second, Menser alleges that on or about October 31, 2012, he and other inmates witnessed officers assaulting another inmate. According to Menser, Defendant Enlers assaulted him after he made a comment about there being no cameras at the scene. Menser alleges that Enlers struck him over the left eye with a mace can. He alleges that Enlers then took him to another location and struck him with her hands while another officer stood by with a shotgun. Menser alleges that he sustained a cut over his left eye from being struck by the mace can.[4]

Menser alleges that Defendant Enlers demonstrated deliberate indifference to his medical needs by wrongfully moving him to a different housing zone with instructions that he be assigned a top bunk. Menser claims that Enlers knew that he could only be assigned a bottom bunk due to injuries sustained before his incarceration at SMCI. Specifically, Menser claims that he no longer has a sense of balance or equalibrium.[5] After being forced to sleep in the top bunk, Menser alleges that on or about November 23, 2012, he fell from the top bunk and separated his shoulder.[6]

---

[3]*See* Omnibus Transcript [44-1] at 15-16.

[4]*Id.* at 17-21.

[5]*Id.* at 18-19.

[6]*Id.* at 35-36.

Menser also alleges that Defendants Wexford Health, and its employee, Doctor Ronald Woodall, were deliberately indifferent to his medical needs by failing to provide him with adequate treatment in connection with two different medical issues. First, Menser alleges that he was in a car accident prior to his incarceration at SMCI, and that he was prescribed pain medication as a result. Menser alleges that Defendants denied him access to the pain medical upon his arrival at SMCI in 2012.[7]

Second, Menser alleges that on or about November 23, 2012, he fell from the top rack of a bunk bed in his cell and separated his shoulder. Menser went to the SMCI infirmary, operated by Wexford Health, and was allegedly sent away without treatment. Menser claims he returned to the infirmary later that day and was taken to Greene County Hospital for treatment. The hospital x-rayed Menser's arm and put it in a sling, and prescribed him a five-day supply of pain medication. Menser was then returned to SMCI. The next morning, Menser alleges that Defendant Woodall examined him and then sent him back to his cell. Menser argues that Woodall did not perform a proper examination, did not him to explain his injuries, and did not allow him to have the pain medication the hospital has prescribed.[8]

Menser alleges he filed an Administrative Remedy Procedure ("ARP") grievance regarding his treatment, and that Defendant Woodall responded to the ARP with false statements. Specifically, Menser claims that Woodall wrongfully stated that he had prescribed Menser pain medication.[9]

Menser alleges that he was eventually taken to a specialist in Hattiesburg to have his

---

[7] *Id.* at 50-51.

[8] *Id.* at 42-45.

[9] *Id.* at 38.

shoulder examined. He alleges that the specialist instructed him and SMCI personnel that Menser should be brought back a month later for a follow-up appointment. Menser alleges that Defendant Woodall did not allow him to return for the follow-up visit, and that he did not see the specialist for another three months. Menser alleges that the specialist advised him the surgery on his shoulder would be more complicated due to the delay. Menser declined to have surgery on his shoulder while incarcerated because he did want to be unable to defend himself during the recovery period.[10] Menser seeks injunctive relief and approximately nine million dollars in damages.[11]

Plaintiff Donald Menser filed a motion for summary judgment on or about June 24, 2014.[12] Defendants Wexford Health and Dr. Woodall moved for summary judgment on October 7, 2014.[13] Although Defendant Enlers has not moved for summary judgment, one of the excessive force claims allged against her will be dismissed pursuant to 28 U.S.C. § 1915(e), as discussed *infra*.

## <u>STANDARD</u>

A motion for summary judgement will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only

---

[10]*Id.* at 42-45.

[11]*See* Complaint [1] at 4.

[12]*See* Motion for Summary Judgment [34].

[13]See Motion for Summary Judgment [44].

a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## **ANALYSIS**

Defendants' Wexford and Woodall Motion for Summary Judgment

### Deliberate Indifference

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). A plaintiff must meet an "extremely high" standard to show deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotations omitted). For a prison official to be liable for deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The test for deliberate indifference is "one of subjective recklessness as used in the criminal law." *Id.*

Deliberate indifference is particularly difficult to establish when the inmate was provided with ongoing medical treatment. "Unsuccessful medical treatments, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citations omitted). The plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for

any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Courts have held that "the decision whether to provide additional treatment is a classic example of a matter for medical judgment," and is insufficient to show deliberate indifference. *See Domino*, 239 F.3d at 756. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Menser alleges two different claims of deliberate indifference. First, he alleges that Defendants denied him pain medication for injuries he sustained prior to his arrival at SMCI. Second, Menser alleges that Defendants denied him adequate medical care following a shoulder injury that occured when Menser fell from his top bunk at SMCI.

In this case, the record does not indicate deliberate indifference by Defendant Woodall in regard to Menser's allegation that he was denied pain medication. Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (affirming district court's dismissal of inmate's deliberate indifference claims as frivolous); *Harris v. Epps*, 523 Fed. App'x 275, 275 (5th Cir. 2013) (per curium) (affirming summary judgment where inmate's medical records reflected that he had received ongoing medical treatment). Menser's medical screening form, completed when he arrived at SMCI on April 24, 2012, does not specify that he had any serious medical problems or that he was currently taking any medications.[14] Thus, medical personnel at SMCI were only alerted to Menser's apparent need for pain medication when he filed his first medical service request form on April 30, 2012, in which Menser stated that he suffers from chronic

---

[14]*See* MDOC Receiving Screening Form [47] at 153.

pain.[15] Menser was prescribed ibuprofen by Dr. Woodall three days later on May 3, 2012.[16] By way of sworn affidavit, Defendant Dr. Woodall avers that in his medical opinion, Menser suffered from substance abuse and psychiatric problems, and so Woodall believed it was appropriate to initially prescribe ibuprofen instead of other, stronger pain medications.[17]

Menser's medical records show that he received pain medication on dozens of occasions at SMCI, including Ibuprofen, Acetaminophen, Naproxen,[18] Tegretol,[19] Toradol,[20] Solumednol,[21] Meloxicam,[22] and Vicodin.[23] Menser's disagreement with the type of pain medication he was

---

[15]*See* Medical Service Request Form [47] at 146.

[16]*Id.*

[17]*See* Affidavit of Ron Woodall [44-3]. Several other doctors at SMCI also noted that Menser suffered from polysubstance dependence and mental disorders that influenced the treatment of his physical ailments. *See, e.g.,* Plaintiff's Medical Records [47] at 1, 18, 145, 157, 164, 168, 173, 177, 183.

[18]Naproxen is a nonsteriodal anti-inflammatory drugs used to relieve pain, swelling and stiffness. *See* Naproxen, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (Last visited 3/18/2015).

[19]Also known as Carbamazepine. Tegretol is used to control seizures in patients with epilepsy, but is also prescribed for nerve pain. *See* Carbamazepine, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682237.html (Last visited 3/18/2015).

[20]Also known as Ketorolac. Toradol is used for the short-term relief of moderately severe pain. *See* Ketorolac, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a693001.html (Last visited 3/18/2015).

[21]Properly known as methylprednisolone sodium succinate, solumednol is used to relieve inflammation, swelling, and pain. *See* methylprednisolone sodium succinate, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601157.html (Last visited 3/18/2015).

[22]Meloxicam is used to relieve pain and swelling caused by osteoarthritis. *See* Meloxicam, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601242.html (Last visited 3/18/2015).

[23]*See generally* Plaintiff's medical records [47].

initially prescribed does not constitute deliberate indifference under Section 1983. *See Gobert*, 463 F.3d at 346 ("Unsuccessful medical treatments, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."). There is no indication that Defendant Woodall refused to treat Menser, ignored his complaints, or purposefully chose to treat him incorrectly. *See Johnson,* 759 F.2d at 1238. Rather, the record reflects that Defendant Woodall examined Menser's history of substance abuse and prescribed medication in accordance with his professional medical opinion.

Menser's medical records clearly negate his claims that he was unreasonably denied pain medication and medical treatment at SMCI. The Court notes that Menser has made no effort to contradict his medical records or otherwise substantiate his original claims of deliberate indifference. Accordingly, the Court finds the Defendants are entitled to summary judgment regarding this claim.

Menser also claims that Defendant Woodall was deliberately indifferent to his medical needs following a shoulder injury sustained from falling off his top bunk. Menser alleges that upon returning to SMCI from the hospital, where he was diagnosed with a separated shoulder, Woodall examined him. Menser alleges that Woodall did not perform a proper examination, did not permit him to explain his injuries, and did not allow Menser to have the pain medication that the hospital prescribed.[24]

The Court again notes that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Menser's medical records reflect that he was taken to Greene

---

[24]*See* Omnibus Transcript [44-1] at 34-38.

8

County Hospital where he received treatment for his separated shoulder. While at the hospital, Menser was prescribed Ibuprofen and Lortab.[25] While Menser was not ultimately given Lortab, he was given Ibuprofen, Vicodin, Toradol, and Salumednol upon his return to SMCI.[26] Dr. Woodall prescribed the Vicodin, and another SMCI doctor prescribed the Ibuprofen, Toradol and Salumednol.[27] He also received a sling and an additional x-ray of his shoulder.[28] Menser admitted at the hearing that Dr. Woodall examined him by observing Menser move his shoulder the morning following the injury.

While Menser is clearly dissatisfied with the medication he was given and Woodall's examination of his shoulder, such disagreement cannot support a claim of deliberate indifference. *See Gobert*, 463 F.3d at 346. He has offered no evidence to show that the medication prescribed or the treatment given was inappropriate. Even assuming that Defendant Woodall declined to prescribe Menser pain medication, the record indicates another doctor at SMCI prescribed a myriad of pain medication for the Plaintiff in the days following the accident. Thus, Menser cannot successfully establish that he received constitutionally deficient medical care in response to his shoulder injury.

Finally, Menser claims that Dr. Woodall prevented him from returning to a specialist at the Southern Bone & Joint Clinic in Hattiesburg. Menser's medical records indicate that the specialist advised him to return within two to three months after his initial appointment on December 20,

---

[25]*See* Medical Records [47] at 79.

[26]*Id.* at 62, 63, & 68.

[27]*Id.* at 63. The medical records reflect that a Doctor McLain prescribed these medications.

[28]*Id.* at 63 & 69.

Case 1:13-cv-00532-MTP   Document 53   Filed 03/19/15   Page 10 of 17

2012.[29] The record shows that Menser's next visit with the specialist did not occur until April 25, 2013–over four months later–where the specialist allegedly told him that surgery on his shoulder would be more difficult due to the delay.[30] Menser indicates that he will not consent to surgery because he fears being unable to defend himself in prison during recovery.[31]

"[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Even assuming that Defendant Woodall acted to prevent Menser from returning to the specialist, the Court does not find that Menser has demonstrated that he suffered substantial harm as a result. He does not allege that the delay in returning to the specialist caused any specific harm, only that the surgery may be more difficult for the surgeon to perform. Furthermore, any exacerbation of Menser's injuries due to his own decision to forego surgery cannot be fairly ascribed to Defendant Woodall.

<u>Respondeat Superior</u>

Menser names Wexford Health Services as a Defendant. At the *Spears* hearing in this case, Menser asserted that his sole reason for suing Wexford is that it employs Defendant Woodall.[32] It is well-settled that Section 1983 does not implicate supervisory or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Rather, a supervisor may only be found liable under Section 1983 if it is personally involved in the constitutional deprivation or if there is "a

---

[29]*Id.* at 55-57.

[30]*Id.* at 2-27. The Court notes that the physician's notes from the clinic regarding the April visit make no mention of this possible consequence of delay.

[31]*See* Omnibus Transcript [44-1] at 42-45.

[32]*Id.* [44-1] at 33.

10

sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also Coleman v. Houston Indp. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997) ("Only the direct acts of omissions of government officials . . . will give rise to individual liability under Section 1983."). Thus, even if a constitutional violation had occurred, Defendant Wexford Health could not have been liable for it under *respondeat superior* theory. *See, e.g., Bush v. Viterna*, 795 F.2d 1203, 1206 (5th Cir. 1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978)). Accordingly, for the reasons set forth above, Defendants Wexford Health and Ronald Woodall are entitled to judgment as a matter of law.

Plaintiff's Motion for Summary Judgment

In his Motion for Summary Judgment [34], Menser restates his claims that Defendant Enlers used excessive force on two occasions, and that Defendants Enlers, Wexford, and Woodall were deliberately indifferent to his medical needs. In addition to his allegations, Menser presents several documents as evidence that will be discussed more fully *infra*.

Menser alleges for the first time in his motion that Defendants Wexford and Woodall were also involved in the decision to not assign him a bottom bunk, and were thus deliberately indifferent to his medical needs based on this additional ground.[33] These allegations are not addressed here, as Menser has not moved for leave to amend nor shown good cause as he was specifically ordered.[34] FED. R. CIV. PRO. 145(a)(2); *see also Tyson v. LeBlanc*, Civil Action No. 10-1174, 2010 WL

---

[33]Motion [34] at 1-3.

[34]*See* Omnibus Order [31] at 1-2. ("Plaintiff's claims and relief sought were clarified and amended by his sworn testimony at the *Spears* hearing. Therefore, only the following claims remain before the Court and no further amendments will be allowed absent a showing of good cause.")

5375955, at * 2-3 (E.D. La. Nov. 19, 2010) (holding that because prisoner-plaintiff had not moved to amend his complaint to encompass additional claims, these claims were not within the lawsuit and would not be addressed by the court). In regard to the remaining deliberate indifference claims against Defendants Wexford and Woodall, Menser simply repeats his original allegations of deliberate indifference or references allegations not presently before the Court. Therefore, due to the analysis of Menser's claims *supra*, the Court finds that his motion for summary judgment should be denied in this respect.

As for Menser's other claims, the Court finds the evidence presented insufficient to support the granting of summary judgment. To support his claims of excessive force, Menser attaches an affidavit from fellow inmate Derrick Stokes.[35] However, the affidavit makes clear that Stokes did not witness Enlers assault Menser. Instead, Stokes merely states that he witnessed Enlers assault another inmate on October, 31, 2012–the same day that Enlers allegedly assaulted the Plaintiff. Menser also submits two medical service request forms, dated October 31, 2012, alleging that an SMCI officer attacked him and requesting medical treatment.[36] These forms do not describe the events surrounding any use of force Enlers allegedly employed. One of the forms states that a Captain Ingram assaulted Menser, and makes no mention of Defendant Enlers.[37] Menser's terse, conclusory allegations do not establish an absence of a genuine issue of material fact. In fact, one of his excessive force claims will be dismissed for failure to state a claim, as outlined below.

Finally, Menser has failed to meet his burden demonstrating that there is no genuine issue

---

[35] *See* Affidavit [34-1].

[36] Medical Service Request Forms [34-6] & [34-7].

[37] *Id.* at [34-6].

of material fact regarding his deliberate indifference claims against Defendant Enlers. As evidence in support of his motion for summary judgment, Menser presents his SMCI prisoner intake form, in which the space indicating whether Menser should be assigned to a bottom bunk is blank.[38] Menser also attaches his inmate time sheet,[39] a photo of his cell bunk, and several MDOC policies.[40] Finally, Menser includes several medical records, including: (1) a medical release form;[41] (2) Menser's medical records from the University of Oklahoma Medical Center;[42] (3) physician's notes from Menser's visit to the Southern Bone & Joint Specialists;[43] (4) an SMCI receipt for a cane Menser purchased;[44] and (5) a medical form signed by Defendant Woodall that specifies Menser is assigned a bottom bunk.[45]

Few of the documents Menser has provided are relevant to his deliberate indifference claim against Defendant Enlers, and those that are relevant do not support the granting of summary judgment in his favor. First, the intake form Menser attaches does not specify whether he should be assigned a bottom bunk. This document would actually negate his assertion that Enlers had notice of his need for a bottom bunk for medical reasons and wrongfully assigned him a top bunk. Second,

---

[38]MDOC Receiving Screening Form [34-2].

[39]MDOC Inmate Timesheet [34-8].

[40]Exhibit J [34-11].

[41]Release of Information [34-3].

[42]Discharge Summary [34-4].

[43]Fax [34-5].

[44]SMCI Receipt for Medical Product [34-9].

[45]Medical Follow-Up Form [34-10].

the medical form signed by Defendant Woodall indicating that Menser should be assigned a bottom bunk could also not have served as notice to Enlers, as it was signed on November 30, 2012–nine days after Menser fell from the top bunk he claims he was wrongfully given. In sum, Menser's evidence does not demonstrate that Defendant Enlers was aware of his serious medical needs and deliberately indifferent to them.

Accordingly, because Menser has failed to meet his burden of demonstrating that there are no genuine issues of material fact and that he is entitled to judgment as a mater of law, his motion for summary judgment will be denied.

Failure to State a Claim

Under 28 U.S.C. § 1915(e), the district court is directed to dismiss an *in forma pauperis* complaint at any time if it determines that the complaint is frivolous or malicious or fails to state a claim upon which relief may be granted. *See Jones v. Bock*, 549 U.S. 199, 202 (2007) (holding that Prison Litigation Reform Act mandates judicial screening of prisoner complaints). A complaint is frivolous if it lacks an arguable basis in law or fact. A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *See Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Id.* (quotations omitted).

When prison officials are accused of using excessive force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Baldwin v. Stalder*,

137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  The Eighth Amendment's "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *See Copeland v. Nunan*, No. 00-20063, 2001 WL 274738, at *2 (5th Cir. Feb. 21, 2001) (quoting *Hudson*, 503 U.S. at 1) (internal quotations and citations omitted). A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Hudson*, 503 U.S. at 5. Some of the relevant objective factors in the inquiry of the application of excessive force include: "1) the extent of the injury suffered; 2) the need for the application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of the forceful response." *Baldwin*, 137 F.3d at 838-39.

Menser alleges that Defendant Enlers berated him and slapped him on or about September 13, 2012, after mistaking him for another inmate who had cursed an SMCI officer.[46] Specifically, Menser claims that Enlers accused him of being a member of the Aryan Brotherhood and then "slapped him around."[47] Menser alleges that the next morning Enlers slapped him two more times.[48] Menser specifically stated that he was not physically harmed by either incident.

The Court finds that Menser has failed to state a claim of excessive force in regard to the incidents on September 13 and 14, 2012. Although the extent of injury is only one factor to be considered in whether an officer applied excessive force, the United States Court of Appeals for the

---

[46]*See* Omnibus Order [31] at 2.

[47]*See* Omnibus Transcript [44-1] at 13-14.

[48]*Id.* at 15-16.

Fifth Circuit clearly requires a prisoner plaintiff to show that he has suffered at least some injury. *See Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (per curium). In this case, Menser unequivocally stated at the *Spears* hearing that he suffered no physical harm as a result of the incidents in September 2012.

Moreover, Menser's own testimony revealed that Enlers slapped him because she mistakenly thought Menser has spoken disrespectfully to another officer. Thus, the force Enlers subsequently employed could be reasonably construed as an attempt "to maintain or restore discipline." *Baldwin*, 137 F.3d at 838. However, even if Menser had alleged that Enlers slapped him in bad faith, he would have nonetheless failed to state a claim against her. *See Wolf v. Webb*, 2012 WL 1072885 at *6 (E.D. Texas Mar. 8, 2012) (holding that a "slap or backhand does not rise to the level of a constitutional claim."); *McDowell v. Wilkinson Cnty. Correctional Facility*, 2008 WL 519632 at *5 (S.D. Miss. Dec. 3, 2008) (holding that even if a slap administered by a prison guard is not "applied in good faith, it was a de mininmis use of physical force, as Plaintiff did not report any lasting injury, and does not constitute an Eighth Amendment violation."). Accordingly, the Court finds that Menser has failed to state a claim of excessive force concerning this allegation, and it will be dismissed.

IT IS, THEREFORE, ORDERED:

1.   That the Motion for Summary Judgment [44] filed by the Defendants Wexford Health and Ronald Woodall is GRANTED. A separate judgment dismissing the claims against Defendants Wexford and Woodall with prejudice will be entered pursuant to Federal Rule of Civil Procedure 58;

2.   That the Motion for Summary Judgment [34] filed by the Plaintiff is DENIED;

3.   That Plaintiff's excessive force claim against Defendant Enlers based on incidents that occurred in September 2012 is dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e).

4.   That Plaintiff's remaining excessive force claim and deliberate indifference claim

against Defendant Enlers remain before the Court, and the undersigned will schedule a hearing on the merits at the appropriate time.

SO ORDERED this the 19th day of March, 2015.

s/ Michael T. Parker
United States Magistrate Judge